CATHERINE DRAUS *vs.* THE INTERNATIONAL SILVER
COMPANY (TWO CASES).

Third Judicial District, Bridgeport, October Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES AND HINMAN, Js.

Claims of law in this court must be confined to those which were
made in the trial court and which are specifically assigned in
the reasons of appeal.
Assignment of error that the Superior Court erred "in sustaining
the award of the commissioner" and "in overruling the claim of
the respondent that the claimant was not entitled to compensa-
tion," are too general to merit consideration by this court.
In passing upon a claim for compensation by the dependent of an
employee who has died within two years after injury, the com-

missioner has no jurisdiction to reopen an award made for such injury in favor of the employee prior to his death and to retry the issues of fact determined at that time; and, therefore, the finding made in connection with the first award may properly be incorporated by reference in the second.

Under §§ 1650 and 4861 of the General Statutes, a father and mother are joint guardians of their minor children and have equal rights, powers and duties toward them.

A minor child may be emancipated from his father by the latter's neglect and refusal to support him, but the status of the mother and the child is not thereby affected.

The obligation of a minor child to obey, serve, and surrender his earnings to, his parents, and their duty to protect, educate and support him are strictly reciprocal.

If a mother was a dependent of a minor son within the language of the Workmen's Compensation Act, she is entitled to an award regardless of whether the son was actually a financial asset to her.

In the present case, a minor son whose death was caused by a compensable injury, turned his entire wages of $20 per week over to his mother, who, because of the abandonment of the family by the father, had no other means of support except the earnings of another minor son and payments of $10 per week made by two adult children for board and room. The decedent had received from his mother his board and room, valued at $10 per week, and spending money of $1.50 per week. The compensation commissioner and the trial court ruled that the sum actually contributed by the decedent to his mother was only the net benefit which she derived from his earnings, oι $8.50 per week, and that, under § 4 of Chapter 306 of the Public Acts of 1921, the award to her must be restricted to that amount. *Held* that this was error; that since the item of $10 for the decedent's room and board and the reasonable allowance to him of $1.50 for spending money were merely part of the expense of discharging the mother's duty of maintaining him, his contribution to her support was the total amount of his payments to her; and that, therefore, she was entitled to an award of one half his average weekly earnings or $10 per week.

   Argued November 10th—decided December 16th, 1926.

APPEALS by both plaintiff and defendant from a finding and award of the compensation commissioner of the fourth district, acting for the commissioner of the third district, in favor of the plaintiff, taken to the Superior Court in New Haven County and tried to the

court, *Ells, J.;* judgments rendered dismissing the appeals and affirming the award, from which both parties appealed. *No error upon respondent's appeal; error upon claimant's appeal and cause remanded.*

*George E. Beers* and *Denis T. O'Brien, Jr.,* for the appellant (plaintiff).

*Cornelius J. Danaher,* for the appellant (defendant).

HAINES, J. It appears from the finding that John F. Draus, a minor son of the claimant, died July 26th, 1925, from pulmonary tuberculosis; that he left surviving him besides his mother, brothers and sisters of the ages, respectively, of twenty-two, twenty, sixteen and fourteen years, also his father, who had not been living with his family for three years and had not in that time contributed anything to the family support; that the claimant was dependent entirely upon the contributions of her children and had no other means of support; that the two older children paid her $10 each per week for board and room, and the two minor children who were working—one of whom was the decedent—gave her all their wages, those of the decedent being $20 per week. The decedent received from his mother, his board and room valued at $10 per week and spending money of $1.50 per week. It further appears that the decedent applied for compensation, and a finding and award was made by the commissioner February 3d, 1925, in which finding it was held that the tuberculosis which caused the death of the decedent was caused by the conditions of his employment, and that he had received an injury arising out of and in the course of his employment. These facts were incorporated in the present finding by reference to the previous finding and award and without further hear-

ing thereon. It is also recited in the present finding that the respondent moved that the finding of February 3d, 1925, be modified and corrected on the grounds that the tuberculosis was communicable and so within the exception of the Compensation Act, 'and also that the finding and award of February 3d, 1925, should not be considered in this case, but that the question of the origin and cause of the tuberculosis should be heard *de novo*. The commissioner overruled both these claims. The award to the claimant was $8.50, and both respondent and claimant then appealed to the Superior Court, where the award was confirmed, and both then appealed to this court.

The ·respondent assigns three reasons of appeal, namely: that the Superior Court erred (a) "upon the facts found in sustaining the award of the commissioner for compensation to Catherine Draus"; (b) "in overruling the claim of the respondent that the claimant was not entitled to compensation upon the facts found"; and (c) "in sustaining the finding and award of the commissioner in awarding the claimant, Catherine Draus, compensation in view of the fact that said John F. Draus, deceased, was a minor whose father was living at the time of his death." The first two assignments do not inform us of the specific error which the respondent claims to have been committed by the Superior Court. These assignments are too general and do not require consideration in this court. "It has been repeatedly held by the courts of this State that claims of law are limited to those made upon the trial of the case in the court below, and to those specifically made in the assignments of error." *Fidelity & Casualty Co.* v. *Palmer*, 91 Conn. 410, 418, 99 Atl. 1052; General Statutes, §§ 5833, 5837. "The first [reason of appeal] is that the court erred in rendering judgment for the plaintiff. He does not 'state the special errors

complained of distinctly,' nor 'the decision of the court upon any question or questions of law arising in the trial' by which he thinks himself aggrieved. . . . Such an assignment does not meet the requirements of these statutes; it is too general, and will be disregarded. *Harper Machinery Co.* v. *Ryan-Unmack Co.*, 85 Conn. 359, 363, 82 Atl. 1027. 'This is a sort of blanket objection which this court will not consider.' *Fagerholm* v. *Nielson,* 93 Conn. 380, 387, 102 Atl. 333." *Hine* v. *McNerney,* 97 Conn. 308, 309, 310, 116 Atl. 610; *McKeon* v. *Byington,* 70 Conn. 429, 432, 433, 39 Atl. 853; *New York, N. H. & H. R. Co.* v. *Hungerford,* 75 Conn. 76, 82, 52 Atl. 487; *Hayden* v. *Fair Haven & W. R. Co.*, 76 Conn. 355, 365, 56 Atl. 613.

The finding shows that the commissioner, over the respondent's objection, incorporated the February 3d finding in the present finding by reference without further hearing. This ruling of the commissioner was not specifically appealed from by the respondent, but is, by the Superior Court in its memorandum of decision of August 3d, 1926, found to be correct. We need go no further with this phase of the case, than to say that the conclusions of the Superior Court in this regard were correct. *Biederzycki* v. *Farrel Foundry & Machine Co.*, 103 Conn. 701, 131 Atl. 739.

The respondent's third reason of appeal fairly raises the question whether the claimant could, under the facts found, be held to be a partial dependent of her decedent minor son. It appears that the father had been separated from the family for more than three years and had contributed nothing to its support and this was the situation when the decedent died. The obligations of a minor to his parents are obedience and subjection, and his earnings, if any; while those of the parents are protection, education and support. This was true at common law, so far as the father was con-

cerned, and these obligations are strictly reciprocal. By our statute, the obligations of the mother and the rights of guardianship are now the same as the father's and the "powers, rights and duties" of father and mother are equal. General Statutes, §§ 4861, 1650. "If the right to receive the earnings of minor children, which is conceded to the father, be made to rest upon the liability of the father for their support, the mother, having the same liability, should be entitled to the same right. . . . It is difficult to imagine any grounds on which the right of the father to the earnings of minor children can be placed, which do not apply with equal or greater force in support of the right of the mother." *Matthewson* v. *Perry*, 37 Conn. 435, 437. As between the minor son, and his father, in the present case, the abandonment had the effect of emancipating the son and the father lost his right to the wages of the boy. It has been held that emancipation results where the father allows the minor to make his own contracts—to receive his wages, to shift for himself, or where the father neglects and refuses to support and educate the minor, as where the father voluntarily releases the parental control to a third person—all being elements existing in the instant case. 29 Cyc. p. 1576 *et seq.* and cases cited. While the father's abandonment brings a change of status as between him and the minor child, it obviously cannot affect the existing status of the mother and the child. The mother for three years had been the head of the family. Upon her rested the obligation to support the minor, living with her, with a reciprocal right on her part to the wages of the minor. The ruling of the commissioner and the Superior Court that the claimant in this case was a partial dependent on the decedent was correct. This brings us to the claimant's appeal, which raises the question of the extent of that

dependency.   As we have seen, the obligation of the dependent to support the decedent was an absolute one, and it made no difference in that regard whether the minor earned wages or not.   Whatever he in fact gave his mother was his contribution to her, to enable her to meet her obligation to maintain him.   Both the $10 for room and board and the $1.50 for spending money were items of that maintenance.   A reasonable sum like the latter, for a minor son at work, is as much a part of his maintenance as are the necessaries of food, shelter and clothing, and this item of $1.50 for spending money should have been held a part of a proper charge for maintenance.

Both the dependency and the extent of it were conclusions drawn by the trial court from the subordinate facts, and as such, reviewable questions in this court upon this appeal.   It is found as a fact that the claimant had no other means of support than the contributions made to her by her children, and the decedent contributed $20 per week, his entire earnings.   The other children contributed various amounts; the two who were of age each gave $10 per week for board and rooms, while the two minors who were working, including the decedent, contributed their entire earnings. The injury complained of occurred in 1924, and the rights of the claimant are determined by the provisions of General Statutes, § 5349, as amended by the Public Acts of 1921, Chapter 306, § 4, which provided: "Compensation shall be paid on account of death resulting from injuries within two years from date of injury as follows: . . . (b) to those wholly dependent upon the deceased employee at the time of his injury, a weekly compensation equal to half of the average weekly earnings of the deceased at the time of the injury; (c) in case there is no one wholly dependent upon the deceased employee, to those partially dependent

upon the deceased employee at the time of his injury, a weekly compensation equal to half of the average weekly earnings of the deceased at the time of the injury, provided the amount so paid shall not be more than eighteen dollars weekly, nor less than five dollars weekly, nor, if the average weekly sum contributed by the deceased at the time of the injury to those partially dependent be more than five dollars weekly, not more than said sum so contributed; but the compensation payable on account of death resulting from injuries shall in no case be more than eighteen dollars or less than five dollars weekly. . . ." The commissioner and the Superior Court took the view that the amount of the decedent's contribution, or the statutory measure of the claimant's dependency upon the decedent, was the net benefit which she received from the decedent, and accordingly deducted from the $20 which he gave her, $1.50 for the spending money and $10 for the board and room, leaving $8.50 per week as the extent of the decedent's contribution.

It is obvious that the statute permits an award of not more than one half of the weekly wages of the decedent, which would be $10. If the commissioner and the Superior Court were correct in holding that the measure of the dependence was the net benefit which the dependent received from the decedent's payment, then the award of $8.50 per week was correct. If, on the other hand, the measure of the dependence or the amount contributed, was the total amount actually received from the decedent, the award should manifestly have been one half of the weekly wages as required by the statute. In *Mahoney* v. *Gamble-Desmond Co.,* 90 Conn. 255, 257, 258, 96 Atl. 1025, the minor was earning $5 per week, which was turned over to his father. The respondent made the claim that the cost of the maintenance of the boy should be set off

against this sum and as that cost exceeded the $5 which the father received, there was in effect no contribution by the minor and no compensation could be allowed. In the opinion in that case it was said by this court: "The respondent's claim is, that the true inquiry is whether the deceased was a financial asset to the alleged dependent, and that the mere fact that the boy's earnings entered the common family fund is not material unless those earnings exceeded the cost of his maintenance." After pointing out the distinction between our statute and the English Workmen's Compensation Act, which provides that the amount recoverable shall be reasonable "and proportionate to the injury to the said dependent," we said: "This language required the English courts, in cases of partial dependency, to look into the question whether the deceased was a financial asset and whether his death was a financial injury to the dependent. On the other hand, our Act makes the sole test one of dependency upon the earnings of the deceased at the time of the injury, and fixes the minimum award . . . at $5 per week. We are not, therefore, required in this case to strike a balance between the boy's earnings and the cost of his maintenance, with a view to ascertaining whether his death was a financial injury to the father. We are only to determine whether, at the time of the injury, the father was dependent upon the boy's earnings within the meaning of the Act. As to this we think there can be no doubt. It was the father's duty to support the boy, and it was his right to receive the boy's wages. The boy did not, as the respondent argues, give to the father his pay envelope in exchange for maintenance. Nor did the father maintain the boy in exchange for his wages. The boy's wages belonged to the father. Whatever earnings the boy turned over to the father were used by the father in discharge of

his legal obligation to support his family; and as the father had no other income at the time of the injury, he was plainly dependent upon the boy's earnings for his means of living, within the definition laid down in *Powers* v. *Hotel Bond Co.,* 89 Conn. 143, 152, 93 Atl. 245."

Such amendments to the 1913 statute as were in force at the time of this decision, do not affect the principle here laid down and the reasoning employed applies with equal force to the case under consideration. The amount contributed by this decedent, or the measure of the claimant's partial dependency, was $20 per week, and under the statute then in force, the award should have been $10 per week instead of $8.50.

There is no error upon the respondent's appeal. There is error upon the claimant's appeal and the cause is remanded to the Superior Court with direction to sustain the appeal and return the case to the commissioner for the entry of a finding and award in accordance with this opinion.

In this opinion the other judges concurred.